IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | CRIMINAL INDICTMENT |
| v. | : | NO. 1:18-CR-410 |
| | : | |
| DWIGHT PEARSON, | : | |
| Defendant. | : | |

DWIGHT PEARSON'S SENTENCING MEMORANDUM

Dwight Pearson is scheduled to appear before the Court on Tuesday, August 24, 2021. For reasons set forth in the presentence report, the government's motion and this memorandum, a sentence below the current advisory guideline is appropriate.

Criminal History

In his objections, Pearson pointed out that the prior convictions in 1999 in Leon County, Florida should be merged rather than counted as separate incidents. After an investigation of the records and exchanges with the author of the presentence report, the matter is resolved in Pearson's favor. There was no intervening arrest between the May 1999 offense (¶70) and the later June 1999 charge (¶71). Consequently, three criminal history points are subtracted from the calculation. The reduced points places Pearson in Criminal History Category IV versus V. The advisory guideline is lowered to 110 to 125 months.

Fraud Loss

The plea agreement placed the fraud loss between $1,500,000.00 and $9,500,000.00. Section 2B1.1(b) increases the base by 16 for losses below the $3,500.000.00; any loss above that point is increased by 18 levels. Pearson submits that the record supports the lower bracket.

The Offense Conduct section of the PSR breaks down the several fraudulent acts committed by Pearson and his co-defendant. The actual loss from their combined efforts is placed at $2,379,178.19. That amount would be within the 16 level increase. The intended loss is placed at three times the actual loss: $7,957,110.39 which bumps up the enhancement by two more levels. There are no facts in the Offense Conduct section that address this additional loss amount. Additionally, there is no explanation of who or how the additional $5.6 million was attributed to Pearson. Accordingly, the offense level should be raised only by 16 levels for the loss.

Interplay of the Victim and Loss to Financial Institution

Pearson receives a two level increase under §2B1.1(b)(2)(A)(i) because there were more than 10 victims and an additional two levels under §2B1.1(b)(2)(A)(17)(A) because he derived more than $1 million from a financial institution.

One appellate court has looked at the interplay of these two guidelines. The Second Circuit held that there was no double counting when setting the initial offense

level. However, it viewed the situation as ripe for a downward departure under the pre-Booker restraints.

> We recognize that the Guidelines permit the use of a subsection 2F1.1(b)(8)(B) enhancement in addition to a subsection 2F1.1(b)(1)(N) enhancement. Nevertheless, we think that the cumulation of such substantially overlapping enhancements, when imposed on a defendant whose adjusted offense level translates to a high sentencing range, presents a circumstance that is present to a degree not adequately considered by the Commission. . . and therefore permits a sentencing judge to make a downward departure.

*United States v. Lauersen*, 348 F.3d 329 (2nd Cir. 2003)(addressing the §2F which was merged into §2B).

Pearson submits that he fits the bill for a downward departure based on the resulting inflated offense level.

<u>Conditions of Confinement</u>

Pearson has been held in detention since his arrest on October 24, 2018. Initially, he was placed at the Robert A. Dayton Detention Center. For reasons completely unrelated to his personal conduct, in February 2020, Pearson was transferred to the United States Penitentiary (U.S.P.).

The COVID epidemic has created health hazards for inmates, detainees and BOP staff over the past 18 months. A compassionate release program was instituted to release high risk inmates from custody due to their exposure to the virus. As a pretrial detainee, Pearson could not be considered for release. He remained in an environment where he was frequently exposed and rarely tested for the virus.

U.S.P. Atlanta is notorious for poor conditions. In the past, there has been arsenic in the water. Detainees are denied regular change of clean clothing. Due to corruption, inmates have been transferred to other BOP facilities. Detainees continue to live in squalid conditions.

Additionally, both facilities have banned visitation. Pearson has not had any in-person or video meetings with his significant other while in pretrial detention. His contact with the outside world is limited to emails and telephone calls.

The Eleventh Circuit has recognized that harsh pretrial conditions are grounds for a departure. In *United States v. Pressley*, 345 F.3d 1205 (11th Cir. 2003), the defendant had been subjected to 23 hour lock-down at U.S.P. Atlanta for the six years his case was pending. The Court found the conditions to be extraordinary both in terms of length of detention and conditions of confinement. A substantial departure was recommended.

Pearson has been in pretrial detention for half the amount of time as Pressley. However, the conditions at U.S.P. Atlanta are worse now than when Plessey was in

detention. Pearson has faced the physical risk and psychological stress of being exposed to the COVID virus on top of the other lock down and restrictions faced by Plessey.

Motion for Downward Departure for Substantial Assistance

Pearson pled guilty in May 2019. Included in his plea agreement was a conditional §5K1.1 motion for substantial assistance. For the past two plus years, Pearson has stood by his willingness to testify against his co-defendant. The government did not need to revisit Pearson's account at any time during his co-defendant's defense of the charges. The government stated in its sentencing memorandum that "Pearson's debriefing and potential testimony . . . were factors that motivated [the co-defendant] to also plead guilty. The never vacillating willingness of Pearson warrants a departure of more than the two levels recommended by the government.

Conclusion

The advisory sentence is amended by virtue of the change in the Criminal History Category to 110 - 137. It is further reduced to 92 - 115 months due to Pearson's substantial assistance. An additional departures of four levels is in order because of the loss calculation and conditions of his pretrial detention. The government is recommending a sentence at the bottom end of the adjusted guideline. All in all, a sentence of 63 months on the fraud count followed by the mandatory 24

months on the aggravated identify counts would be a reasonable sentence that is not harsher than necessary to impose on Dwight Pearson.

>
> Respectfully submitted,
>
> /s/ *Jay L. Strongwater*
> Jay L. Strongwater
> Georgia Bar No. 688750

1360 Peachtree Street
Suite 910
Atlanta, Georgia  30309
404.872.1700
Counsel for Dwight Pearson

CERTIFICATE OF SERVICE

I hereby certify that I have on this day served a true and correct copy of the within and foregoing pleading upon counsel for the government by electronically posting through the District Court's ECF Filing System, addressed as follows:

Diane Schulman
Assistant United States Attorney
Diane.Schulman@usdoj.gov

This  23rd  day of  August , 2021.

/s/ *Jay L. Strongwater*
Jay L. Strongwater
Georgia Bar No. 688750

1360 Peachtree Street
Suite 910
Atlanta, Georgia  30309
404.872.1700
Counsel for Defendant